[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is a consolidated trial on disposition of the CT Page 15651 neglect petition, filed by the Department of Children and Families (hereinafter, The Department) on February 3, 1998, and the Motion to Vacate Order of Temporary Custody and Transfer Guardianship, filed by the maternal great aunt and uncle on May 3, 1999.
The Court heard testimony from Alexis M Department social worker; Merrilla S, maternal great aunt; Loretta M, paternal grandmother; Suzanne G, foster mother; Joe M from Birth-to-Three; Patricia M, Michael's (sibling) therapist, Lisa D, next door neighbor to the G's; Elaine W-P, friend of Mrs. G.
Vincent was adjudicated as a neglected child on January 22, 1999, therefore, this matter is dispositional only in nature and must be determined solely on the basis of the best interests of this child.
The evidence presented in this case reveals the following facts:
When Vincent was born, he tested positive for prenatal exposure to cocaine. As a result, he has delays in all areas of development. This child is very demanding and requires extraordinary attention. He requires a high level of stimulation and the ability of the caretaker to provide stimulation and facilitate his development is crucial. He will require follow-up in the areas of his hearing; special education; and physical therapy.
On February 12, 1999, Vincent was placed in the home of Suzanne and Stanley G, where his brother Michael was also residing. Mrs. G attended nursing school, was a nurses' aid and has worked in a hospital on the pediatric floor. The G's have eight (8) children in their home. Mrs. G testified that she spends approximately 14 hours each day dealing with Vincent and/or his service providers. The testimony clearly indicates that Vincent has made significant progress while in the G home, and is very bonded to his foster mother. Joe M from Birth-to-Three, testified that the fact that there are other children in the home can be an asset in that interaction is very important for this child.
Vincent was placed with the G's because his brother Michael is placed there. Michael's therapist testified that there is a bond between the boys. She also testified that Michael has made CT Page 15652 progress since his brother was placed with him. He talks about Vincent often, is excited about him living with him, and would be devastated if Vincent were to be moved.
Neither the mother nor the father are in a position to care for this child and their position is that guardianship of Vincent should be transferred to the maternal great aunt and uncle Merilla and Thomas S.
The S's live in North Carolina on a lovely farm with lots of open space and fresh air. Mrs. S has extensive experience working with children, although it is remote in time. She also has grandchildren which she often cares for. Her daughter lives nearby and Mrs. S testified that she would be available to help her care for Vincent if he were placed with her. It appears also, that the S's have been trying since the very beginning to get Vincent into their care.
An Interstate Compact Study was done on the S's home and a report of that study, dated April 28, 1999, was entered into evidence. The conclusion of the study is that, while the S's appear to be a very kind and generous couple; financially secure; supportive of each other and anxious to adopt Vincent, there were concerns about their ages and previous history of health problems and alcohol abuse. There were concerns about the S's' ability to cope with problems which may arise due to Vincent's many special needs. The recommendation, therefore, was against placement of Vincent with them.
The maternal great aunt and uncle argue that Vincent should be placed with them because they are his blood relatives and they are capable of raising him. In addition, the wishes of the parents should be followed. The great aunt and uncle are not the parents, however, and their rights do not rise to the level of parents. In addition, the situation presented in this case with respect to blood relationship, is that both homes have relatives, one, his brother, and one, his great aunt and uncle. As stated earlier, the best interests of Vincent must be the controlling factor here. Much time was spent at the trial dealing with how Vincent was placed with the G's, what the Department intended and what was told to the S's. However, regardless of how he got there, Vincent in is a home, with a blood relative with whom he is bonded, and with a support system which has allowed him to thrive. To remove him to a home, albeit with blood relatives, hundreds of miles away from his brother and parents (with whom CT Page 15653 the Department must work toward reunification if Vincent is committed), would clearly not be in his best interests. Further, there was no testimony given regarding what services are available in North Carolina to address Vincent's special needs.
Taking all of these factors into consideration, this Court finds it in the best interest of Vincent M., that he be committed to the Department of Children and Families for a period not to exceed twelve (12) months. Effective today, commitment will expire December 3, 2000. The Department must file to extend or revoke commitment; transfer guardianship; or terminate parental rights by no later than October 3, 2000.
Harleston, Judge